33 C.C.P.A.(Patents)

## RODLI v. PHILLIPPI.

### SAME v. LING et al.

**Patent Appeals Nos. 5095, 5096.**

Court of Customs and Patent Appeals.

March 6, 1946.

Karl W. Flocks, of Washington, D. C., for appellant.

Howard L. Fischer, of Minneapolis, Minn. (Frank A. Whiteley, of Minneapolis,

Minn., and Herbert J. Jacobi, of Washington, D. C., of counsel), for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

GARRETT, Presiding Judge.

These are appeals from decisions of the Board of Interference Examiners of the United States Patent Office awarding priority to the party Phillippi. The subject matter of both interferences consists of a "marker decalcomania" hereinafter more particularly described. Because of the similarity of the subject matter and the issues respecting priority the records were combined in the Patent Office and come to us in consolidated form.

It will be observed from the formal caption that in appeal No. 5095 the interference (No. 79,723) is solely between Rodli, appellant, and Phillippi as appellee, and that in appeal No. 5096 (interference No. 79724), Rodli is named as appellant and John M. Ling and Phillippi are designated as appellees. With respect to the latter case, the party Ling (the "juniormost" party) filed notice on June 1, 1945 (about two months after the record had been printed), that he would not proceed further in the appeal. So, appeal No. 5096 is before us as a two-party case, in which only Rodli and Phillippi are involved.*

So far as Phillippi and Rodli are concerned, both the interferences involved were declared on the same date—October 14, 1941— between the same respective applications of those parties. The application of Rodli, serial No. 296,845, was filed September 27, 1939, and that of Phillippi, serial No. 318,701, February 13, 1940.

No questions ancillary to priority were raised in the cases. So, determination of priority is dependent solely upon the evidence introduced during trial.

It was incumbent upon Phillippi as the junior party to establish priority by a preponderance of the evidence. To that end he himself testified and caused to be called certain parties as corroborating witnesses. He also introduced certain documentary and physical exhibits.

---

* The transcript certified to us embraced the record in a third case (appeal No. 5097, interference No. 79,725) in which the party Ling was appellant, Phillippi and Rodli in the order named being the appellees, but that appeal was dismissed by us on June 20, 1945, upon motion of Ling. Being of no interest in the two cases involved it is not included in the caption.

The party Rodli also took testimony consisting of his own and that of various other witnesses and introduced numerous exhibits.

Phillippi in his respective preliminary statements claimed reduction to practice on or about May 15, 1936, and, during the taking of testimony, introduced evidence by which he sought to establish an additional reduction to practice in the fall of 1937.

Rodli in his respective preliminary statements alleged dates for all pertinent activities, including reduction to practice, on or about September 1, 1938.

The board awarded Phillippi reduction to practice "not later than the early part of 1938," and, since that was prior to any pertinent date alleged by Rodli, held it unnecessary to discuss the latter's evidence.

While the subject matter of the counts involved in both interferences is substantially the same, the fact that Ling was a party below in interference No. 79,724 necessitated separate decisions by the board, but since he is no longer a party, and the issues are practically identical as between Phillippi and Rodli, we may discuss and determine the two cases together.

In interference No. 79,723 (appeal No. 5095) only one count is involved. It reads:

"A marker decalcomania comprising a backing, a soluble adhesive, a reflecting binder, said reflecting binder being loaded over a portion of its area with small glass spheres."

Interference No. 79,724 (appeal No. 5096) embraces three counts, which read as follows:

"1. A decalcomania comprising a backing sheet, a paste coating thereupon, a flexible coating adhered to said paste coating, and a multiplicity of transparent reflecting elements closely grouped and adhered to said flexible coating.

"2. A decalcomania comprising a backing sheet, a paste coating thereupon, a transparent flexible film adhered to said coating, and a multiplicity of transparent reflecting elements closely grouped and adhered to said flexible film.

"3. A decalcomania comprising a backing sheet, an adhesive coating thereupon, a film releasably adhered to said adhesive coating, and a multiplicity of reflex reflecting elements adhered to said film and removable therewith."

In analyzing the counts the brief for Rodli directs attention to the fact that one element of the count in interference No. 79,723 is defined as "a reflecting binder," while in the other counts the corresponding element is referred to as "flexible coating" or "transparent flexible film" or "a releasable film" and asserts that the difference is "significant."

It is not contended, however, that Phillippi's disclosure fails to support all the counts, and, in the final analysis, the contention on behalf of Rodli is, to state it bluntly, that the testimony introduced on behalf of Phillippi may not be accepted as true.

That constitutes the only issue in the cases. If we follow the board and accept it as true, the decisions appealed from must, of course, be affirmed.

In view of this situation we have scrutinized the testimony with great care, in the light of Rodli's analysis of it, as stated in his brief, and in the oral argument before us, as well as in the light of the board's discussion and analysis of it.

It is elemental, of course, that an appellate tribunal such as this court will not lightly set aside findings of fact made by a trial tribunal, such as the Board of Interference Examiners of the United States Patent Office. That body is composed of experienced and competent triers of fact. As such they are daily accustomed to examining and weighing evidence adduced in interference proceedings. Obviously, its findings of fact in this case, as is asserted in the brief for Phillippi, "should not be disturbed on appeal, unless there is most cogent evidence of mistake and miscarriage of justice * * *."

In view of the character of the issue presented, it seems proper to quote literally from the board's decision rather than attempt to paraphrase it. We quote the following from the decision in interference No. 79,723 which is repeated, practically word for word, in the decision in interference No. 79,724:

"The party Phillippi contends that he reduced the invention to practice on May 15, 1936 at which time he allegedly made a decal in the form of the initial "M" and placed the same in his notebook under the date of May 15, 1936. This has been introduced in evidence as Phillippi Exhibit 1.

"It is also contended that the invention was again reduced to practice in 1937 when Phillippi asserts he applied a beaded transparent decal to one half of a sign which is here in evidence as Phillippi Exhibit 4.

"Helen Phillippi, Phillippi's wife, testified concerning Phillippi Exhibit 1 as follows:

"Q. 12. Did your husband ever explain an invention he had? A. Yes, he did.

"Q. 13. Will you relate what it was, or what he told you about it? A. Well, it was in May, 1936, and he came home and said he really had something, and he showed me an initial transfer which had beads applied on it. He held it up to the light and showed me how it would reflect the light and cause an illumination, and then he said he was going to make a complete new build-up of it and he made a drawing at that time and I signed his notes that day.

"Q. 14. Was he in the habit of keeping records of his ideas? A. Yes, as long as I can remember he always did, of varnishes and adhesives and different things he came across.

"Q. 15. Then he made a practice of keeping a record of his different developments? A. Yes, as long as I remember, he did.

"Q. 16. You said you signed the record he made May 15, 1936? A. Yes.

"Q. 17. I show you Phillippi Exhibit 1 and ask if you can identify your signature here? A. Yes, this is it up here in the left-hand corner.

"Q. 18. Is it on any other sheet in the book? A. Yes, it is on this one.

"Q. 19. That is on the opposite page of the book, in the lower right-hand corner? A. Yes, I saw him take the backing sheet off this initial and mount it on a piece of paper. (Witness points to the initial M of the beaded decalcomania pasted in Exhibit 1).

"Q. 20. He took that off and demonstrated how it operated? A. Yes, how it slid off the backing sheet. I knew what decalcomanias were.

"Q. 21. When did you sign your name, Helen Phillippi, here in the right-hand corner of one sheet and at the top in the left-hand corner on the other side of the book? A. Well, at the same time.

"Q. 22. What date? A. The 15th of May, 1936.

"She testified as to Exhibit 4 as follows:

"Q. 29. I show you Phillippi Exhibit 4 and ask if you can identify it? A. Yes, I can, he made this sign for my father.

"Q. 30. Your father's name is—A. Dan Sampson.

"Q. 31. Did your father have a summer resort? A. Yes, a resort in northern Minnesota.

"Q. 32. Did you say Mr. Phillippi made this sign for your father? A. Yes, he did.

"Q. 33. Do you know when? A. Well, approximately, 1937. The reason I say that is I know he made transparent film, and I watched him apply this transparent film, and that was about the same time.

"Q. 34. Did you see him put this diagonal piece of transparent film on the side? A. Yes, he put it on only half of the sign to show how the half with the beads on would reflect or illuminate.

"Q. 35. Can you tell us more clearly just when he did that? A. Well, I am sure it was in 1937, because I know that is the time he made the film and it was at that time, at the same time he was making these signs, I saw him make them.

\* \* \* \* \* \*

"Q. 37. Can you further identify this Exhibit 4 and tell me a little more clearly as to your recollection of when he made it, the date? A. Well, as I said, it was at the time he made the transparent film and that was in 1937, because I signed his notes at that time when he made the film, and also it was a little over a year after he had been working at Jeffry-McPherson, and he had come up to my dad's and he told him he was going to make some signs for him, and that was in the summer-time.

"*There was no cross-examination on this part of her testimony.* (Italics supplied here.)

"Elaine Hurley, who was a stenographer and bookkeeper for the Jeffry-McPherson Printing Company and who also helped in the shop at times, testified that she was so employed from December 1935 to December 1937 and that during that time Phillippi showed her a beaded decalcomania similar to Phillippi Exhibits 9A and 9B which had light reflecting beads, and that he showed her how it could be transferred. It is apparent from her testimony that she

understood what decalcomanias were, and that she had helped make them.

"Charles Welty, testified that Phillippi told him about beaded monogram decalcomanias in July of 1937 at which time he showed him articles like Phillippi Exhibits 9A and 9B. Phillippi demonstrated how they worked by wetting them and sliding them off.

"Welty further testified that Phillippi showed him the beaded summer resort sign, Phillippi Exhibit 4, in the early spring of 1938 at which time he also showed him some transparent decalcomania material like Phillippi Exhibit 4A which he demonstrated by transferring to a colorful portion of a calendar with the result that the coloring was emphasized.

"The record shows that Phillippi was enthusiastic over the beaded decalcomanias but was financially unable to commercialize them himself or to file a patent application thereon. However, he was active in trying to interest someone to finance him and finally was successfully in securing aid during the summer of 1939.

"It appears from the patents cited during the prosecution of the Phillippi application and from Phillippi's testimony that flexible backings covered with paint or varnish in which glass beads were embedded were old in the art prior to any date alleged by the parties herein. It also appears that decalcomanias were old and well known in the art. Under these circumstances and as the count is not limited to a road marker, it is believed that it is only necessary to establish that a beaded decal could be successfully transferred in order to constitute a reduction to practice of a decalcomania according to the issue herein.

"The limitation of 'marker' is not deemed to be such as to limit the device to a highway or outdoor marker, although that appears to be the principle use to which the parties eventually put their devices; but merely limits the device to one which may be employed to attract attention or convey information. Obviously, the initial monograms and the summer resort sign of Phillippi respond to this requirement.

"It is argued that the testimony of Phillippi and his witnesses is based very much on recollection and is not supported by any written or documentary evidence.

"The law is well settled that oral testimony is competent, and we find nothing in the record to discredit the assertions of the witnesses as to what transpired and when.

"It is contended by Rodli, that whatever Phillippi may have done on May 15, 1936 with respect to the alleged transfer in Phillippi Exhibit 1 constituted neither a conception nor a reduction to practice of an operative loaded decal because Phillippi stated that his first attempt was to apply beads over a printed decalcomania but that he found this material was not flexible. This contention overlooks the fact that Phillippi further stated that on the same day he created a series of flexible beaded films of his own of which the initial M, Phillippi Exhibit 1, is allegedly one.

"We are of the opinion that the testimony of Phillippi and his corroboratory witnesses as outlined above, adequately establishes that the invention was reduced to practice not later than the early part of 1938 by both the initials and by the resort sign and that, although Phillippi did not file his application until long after that time, he never abandoned the invention. No unfavorable inference can be drawn from this long delay in filing which has been satisfactorily explained by Phillippi's financial condition."

We deem it somewhat significant that Mrs. Phillippi was not cross-examined on that part of her testimony relating to Exhibits 1 and 4. She was a competent witness and we find nothing anywhere in the record, either circumstantial or direct, which would justify an assumption that she was not speaking truly. The exhibits obviously constituted a reduction to practice of the counts and, as we view it, if they were made at the times she said they were made Phillippi was entitled to those dates for reduction to practice.

With respect to the testimony of the witness Welty, referred to in the board's decision it is contended on behalf of Rodli that it is entitled to practically no weight, in part because he testified from recollection, but largely because he is alleged to have acquired a one-third interest in Phillippi's patent application. It appears from Welty's testimony that as early as 1937 Phillippi sought to obtain his aid in financing a patent application and showed him different devices which according to Welty's description of them apparently embodied the invention of the counts, but, seemingly, Welty declined to aid him until sometime in 1939, which was long subse-

quent to the period awarded Phillippi by the board for reduction to practice. We can discern no reason for doubting the integrity of Welty as a witness.

It may be noted that the board's findings of fact were direct findings based upon Phillippi's record—not upon inferences or speculations. Rodli's contentions before us consist almost wholly of inferences which it is insisted should be drawn because of the interest of Phillippi, his wife, and Welty in the outcome of the litigation.

Among other things, Rodli's counsel apparently seeks to have the court question the existence in May 1936 of the notebook in which Exhibit 1 was inserted. We find no reason for indulging any doubt in that regard.

Since, as has been indicated, the sole issue here relates finally to the veracity of Phillippi and his corroborating witnesses and since we discern no reason for differing from the board's conclusion in that regard, it is unnecessary to prolong this opinion by discussing in further detail the arguments and speculations put forward on Rodli's behalf, nor is it necessary to review Rodli's record.

The decision of the Board of Interference Examiners in interference No. 79,-723 (appeal No. 5095) is affirmed.

The decision of the Board of Interference Examiners in Interference No. 79,-724 (appeal No. 5096) is affirmed.

Affirmed.