53 CCPA

Charles HARRIS, Jr., Appellant,

v.

Frank O. CLIFFORD and Chris W. Yoder, Appellees.

Patent Appeal No. 7510.

United States Court of Customs and Patent Appeals.

Aug. 4, 1966.

Robert G. Irish, Fort Wayne, Ind. (James W. Dent, Washington, D. C., of counsel), for appellant.

William T. Estabrook, Washington, D. C., for appellees.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and ALMOND, Judges.

MARTIN, Judge.

This is an appeal by Charles Harris, Jr., the junior party, from a decision of the Board of Patent Interferences of the Patent Office awarding priority of invention to Frank O. Clifford and Chris W. Yoder, the senior party.[1] The board in doing so ruled adversely on appellant's claim of derivation of the invention by appellees from appellant, Harris.

The invention relates to a steam apparatus used to warm hotdog and hamburger buns in drive-in establishments. The details of the structure are set out adequately for the purposes of this opinion in the single count in issue, which reads as follows:

A steaming head assembly for warming food products comprising a vertically disposed tubular casing member having open upper and lower ends, an apertured plate member extending across said upper end of said casing member, a first plate member extending across said casing member spaced from said apertured plate member and defining a dry steam chamber therewith, another plate member extending across said casing member spaced from said first plate member and defining a steam storage chamber therewith, a raw steam inlet conduit extending through said other plate member for introducing steam to said storage chamber from a source of steam supply, a steam outlet conduit extending through and above said other plate member and spaced from said raw steam inlet passage, a dry steam inlet conduit communicating with said dry steam chamber and extending therefrom to the side of said other plate member remote from said steam storage chamber and having at least a portion of the wall thereof in contact with the steam in said steam storage chamber and spaced from said raw steam inlet conduit for introducing dry steam into said dry steam chamber, and a control valve disposed on the side of said other plate member remote from said steam storage chamber and connecting said steam outlet conduit to said dry steam inlet conduit for selectively admitting steam from said steam storage chamber to said dry steam chamber.

Harris' assignee is the Dewey-Shepard Boiler Co., and the Clifford and Yoder application is assigned to the Komo Corporation.

Both parties took testimony but submitted the case to this court on the rec-

---

1. Harris is involved on application, serial No. 118,575, filed June 21, 1961 and Clifford and Yoder on application, serial No. 61,461, filed October 10, 1960. The latter application was orginally filed as a sole application of Clifford but was converted to a joint application as a result of papers filed July 24, 1961. See 35 U.S.C. § 116 and Patent Office Rules 45(c).

ord and their briefs without oral argument.

The evidence clearly shows that Yoder, operator of Dog 'n Suds hot dog stands or drive-ins, made a crude steamer device to warm buns for such stands in July 1959, having had Dewey-Shepard, for which Harris worked, supply a miniature boiler for providing steam to the steamer head. That steamer head along with the boiler was exhibited at a convention of owners of Dog 'n Suds stands, a franchised group, in February of 1960. It was seen there by one James Goff, who with Clifford, his father-in-law, an orthodontist, became interested in the prospects of marketing such a device. The steamer, with an aluminum head, had some faults which the three had difficulty overcoming and in July of 1960, Goff, Yoder and Clifford approached Harris, who indicated that Dewey-Shepard could make a steel steamer head for such devices and supply the boilers. Harris had a head made up for them by around July 15 to July 20 of 1960 but it was unsatisfactory. That head did not comply with the count because the solenoid valve was at one side of the head instead of below it and the piping led from the valve to the dry steam chamber directly rather than passing through the steam pressure chamber. Later that month, between the 20th and 28th, a head which did have those features was built at Dewey-Shepard. That head worked satisfactorily and resulted in the Komo Corporation formed by Clifford, Yoder and Goff, giving Dewey-Shepard an order for 100 steam heads and boilers on July 27 or July 28, 1960.

The evidence in behalf of the appellant Harris includes, in addition to his own testimony, the testimony of George D. Arnold, the president of Dewey-Shepard, Walter Schrader, a welder employed by Dewey-Shepard, and Frederic P. Carson, a private investigator hired by Dewey-Shepard through Arnold. This evidence was relied on by appellant as showing conception and actual reduction to practice prior to appellees' filing date and also as showing that appellees derived the invention from appellant.

The board found:

* * * that the evidence on behalf of Harris does *not* establish that he was first to conceive and first to reduce the invention to practice and that the evidence does *not* establish derivation of the invention in issue from him by the senior party Clifford et al.

as alleged by Harris.

■■ At the outset, we should note that one of the principles adhered to by this court in reviewing priority decisions in interference proceedings is that the findings of fact made by the board should not be disturbed unless "there is most cogent evidence of mistake." See Rodli v. Phillippi, 154 F.2d 139, 33 CCPA 865.

Appellant relies heavily on two exhibits in support of his position. These exhibits were introduced in evidence at the outset and were identified as Harris Exhibits 1 and 2. The exhibits are drawings which Harris maintains he prepared and bear dates of December 28, 1959 and January 17, 1960, respectively. After noting that the structure shown in Exhibit 1 clearly fails to support the count, the board stated:

* * * The structure illustrated in Exh. 2 corresponds to a substantial extent with the structure of the device disclosed in *both* of the involved applications but does [not] by itself support the count in issue because it does not show "an apertured plate member" and "a control valve," required by the language of the count, in the structural and functional cooperation with the other elements of the device set forth in that language.

With reference to Harris's testimony regarding these drawings, the board stated:

* * * It may be summed up as indicating that Harris didn't know or couldn't say when he made or dated those drawings. See for example the following testimony. Thus:

XQ188. Your practice was not uniform, consistent in this regard;

in other words, that each time you made a drawing you did not then—

A. No. I did not, for the reason that whether or not—we had not at that time determined whether or not it would be used or not; *consistently* I *think* it was the practice *to make an* item and if it was satisfactory, that is as long as it didn't involve any more detail than this, to make it and *if it works make your necessary drawings.*

XQ189. I refer you again now to Harris Exhibit 2 and ask you whether you made that drawing?

A. Yes, sir, I did.

XQ190. Prior to conference or acquaintanceship or meeting or discussion jointly with Dr. Clifford, Mr. Yoder, Mr. Goff?

A. Read that back.

(XQ190 read by Reporter.)

A. I don't know, I just can't answer; the only thing that I can bank on that I have remembrance of is the fact that this *would not have been drawn* nor accepted for use *until* the item *had* already *been made*, because as I recall I had *submitted this* particular *drawing* to the American Society of Mechanical Engineers for—*might not have been this drawing,* 1959, is a little hard for me to remember, 1960—January, 1960; but I would say that *at the time of this drawing we* had certain things proven in the use of this head that certainly we had our heads together for some time in the construction of this.

In our view none of Harris' testimony tends to establish *any* clearly determinable date when drawings, Exhibits 1 and 2, were in existence or when *he* had possession of the complete conception of the invention to which they relate. Clearly, the dates on the drawings are unreliable for any purpose. Moreover, that testimony tends to establish that the drawings were in fact made some time after the structure depicted therein had been built

and that was *after* Goff, Clifford, Yoder and Harris had done "considerable amount of * * * work" (Q 31) in July of 1960, prior to a Komo Corporation order dated July 28, 1960 for 100 steam heads. * * *

Harris further stated that he was aware of the Komo order for 100 steam heads dated July 28, 1960 although he did not state clearly when he became aware of it. He testified that he believed the order was for the type of head shown in Exhibit 2. The board in particular noted further testimony that he made a number of steaming heads prior to that order, in which he stated:

A. *Primarily I worked with Dr. Clifford, Mr. Yoder, Mr. Goff,* and it is difficult for me to tell you to what extent that *we went* because *we* tried about everything that was conceivably possible in the way of design and structure in order to achieve—let's say the amount of satisfaction which was finally achieved by the head which is on this drawing, Exhibit 2-A.

Q148. Would you state whether or not this work that you told us of was continuous?

A. I would say that it was continuous, at no time did *we* ever anticipate dropping it; might say that it was rough at times, by which *we* wondered if *we* would ever be able to accomplish the aim with this particular type of head, but at no time was it ever given up, if that is what you mean. [Emphasis by board.]

Questions to Harris as to his inventorship resulted in the following testimony:

Q4. Were you the Inventor of that application?

A. I can't hardly answer that, I think this is a matter that we are trying to settle, is it not. This is the Application which was submitted on the material of which I felt we were entitled to.

Q5. Let me state it differently. You are the Charles Harris, Jr. who executed this Patent Application?

A. I am, that is true.

\* \* \* \* \* \*

XQ 193. You are acquainted with Harris Exhibit 2, now in view of that, your acquaintance with reservations regarding the issue of this Interference, and your acquaintanceship with Harris Exhibit 2, *do you now claim to be the inventor* of the device or mechanism embracing the particular combination of parts or elements specified in the issue or count of this Interference, as you now understand them? [Emphasis by board.]

A page of testimony followed the last question with the answer finally amounting to a statement that he thought "that there was something patentable in this regard."

After considering the testimony of Harris, including that referred to above, the board concluded that:

\* \* \* [the testimony] does not indicate conviction on the part of Harris that he was or is the sole inventor of the subject matter in issue. We note, further, that he did not execute his involved application until *nearly a year* after his joint efforts with Yoder, Goff and Clifford and after disagreement between Dewey and the Komo Corporation.[2]

Arnold, in his testimony, attempted to fix the date of Harris Exhibits 1 and 2 with reference to a certificate for approval by the American Society of Mechanical Engineers dated January 27, 1960 for miniature boilers manufactured by Dewey-Shepard. However, no clear relationship of that certificate to the head was shown, it being stipulated that the certificate related only to a boiler. Arnold also gave testimony with respect to the events connected with the work of Harris and Clifford, Yoder and Goff that resulted in the order from Komo and tests he assertedly made himself of a head structure as shown in Harris Ex-

hibit 2. Concerning the first matter, the board stated:

It is clear that Arnold didn't know anything at all as to what went on between Harris and Clifford, Yoder and Goff.

As to the latter matter, it stated

We observe that Arnold has furnished no details relating to the tests he asserts he made (or were made) as facts for us to consider in determining whether the results were satisfactory as he stated. Moreover, he has related the occurrence of those asserted tests to no other established dates and relies purely upon his recollection. No details even of the particular heads tested (of the asserted many that were tested) are related.

Schrader was the only other witness testifying with regard to events at Dewey-Shepard. A welder, he testified that he built heads according to Exhibit 2 and that he was aware of the purchase order for 100 such units. The board found the testimony failed to establish when the heads he referred to were actually made or to negative the possibility of their being made after the July 28, 1960 date of the order.

In connection with the Harris record, the board concluded (with references to record pages omitted):

In our review of the record on behalf of Harris we have found no testimony by Harris specific as to details of structure of any identifiable steam head which he purportedly disclosed to Clifford et al. at any time or specific as to dates when such disclosure took place. Arnold's testimony is no more specific than Harris' and much of it is based on pure speculation, see for example Q 78–84, XQ 135 \* \* \*, XQ 136–XQ 143, and Q 1–Q 3 in the record of Harris and see Q 32–Q 41 and Q 113–Q 117 in the record for Clifford et al. Schrader did not refer to Clifford or those associated with him.

---

2. The evidence shows that Komo Corporation advised Dewey-Shepard on March 15, 1961 that it would not purchase from them any more and thereafter obtained its apparatus from another source.

We note as stated in the opinion in the case of Hasselstrom et al. v. McKusick, CCPA, 139 USPQ 511 [51 CCPA 1008, 324 F.2d 1013],

> * * *, the purpose of corroborative evidence is to confirm and strengthen the testimony of the inventor."

Our review of the record for Harris has not persuaded us that the testimony of Arnold and Schrader has fulfilled that purpose in this case either as to conception and actual reduction to practice by Harris or as to derivation by Clifford et al. Consequently we must hold that Harris has not sustained the burden of proof resting upon him.

We find no error in that conclusion.

Moreover, we find, as did the board, that the record on behalf of Clifford and Yoder throws light on circumstances not made clear by Harris' evidence. In fact, that record, which was additionally considered by the board, greatly strengthens our conviction that the board was correct. In particular, there is extensive evidence that Harris' work on the steam heads was done on instructions from Clifford and Yoder with Goff present at times. The evidence further indicates that Yoder contributed the idea of locating the dry steam inlet conduit extending through the steam storage chamber to help insure dry steam, and that Clifford insisted the control valve be located below the chamber. The testimony of Clifford and Yoder, corroborated by Goff, is that Harris resisted both of these features, and, first made heads without them that were unsatisfactory. Finally, he worked late one night with Goff in producing a head which incorporated those features and was promptly tested and found satisfactory by Goff. The latter activities took place just before the order dated July 28, 1960 was placed by Komo.

The board considered that evidence and observed that it is inconceivable that Harris would have offered the objections he did to the construction urged by Clifford and Yoder if a head involving those features had already been developed by him and made by Schrader, particularly when Harris was dealing with a prospective customer for the steam heads. The board observed:

> This matter renders the inconsistent, unclear rambling testimony and evidence of record for Harris even more unconvincing than it is when considered alone and we believe establishes that Harris in fact acted in the capacity of nothing more than a pair of skilled hands in response to the suggestions and urging of Yoder and Clifford in producing a steam head embodying their conception.

We think the evidence clearly supports the board's final conclusion that Harris has not established that he is the inventor of the subject matter in issue. Accordingly, Harris cannot prevail here.

Harris does raise additional questions as to whether Clifford and Yoder are joint inventors and, if they are, whether the Clifford and Yoder application is entitled to no earlier filing date than July 24, 1961, when papers were filed to convert it from a sole to joint application. However, as the board observed, the fact that Harris is not established as inventor of the subject matter in issue makes consideration of those contentions unnecessary.

The decision of the board is affirmed.

Affirmed.

RICH and SMITH, Judges, concur in the result.