55 CCPA

**Application of James M. DENNY and Sven A. Carlsson.**

**Patent Appeal No. 7998.**

United States Court of Customs and Patent Appeals.

June 27, 1968.

Smith, J., dissented.

Harness, Dickey & Pierce, Detroit, Mich. (E. R. Casselman, Detroit, Mich., of counsel) for appellants.

Joseph Schimmel, Washington, D. C. (S. Wm. Cochran, Washington, D. C., of counsel) for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, SMITH and ALMOND, Judges.

RICH, Judge.

This appeal is from a decision of the Patent Office Board of Appeals[1] affirming the examiner's final rejection of claims 20 and 21 in appellants' application serial No. 258,813, filed February 15, 1963, entitled "Building Construction." Claims 13 and 15, the only other claims in the case, have been allowed.

The invention is a building wall construction in which inner and outer skin panels of metal or other materials are held together by metal studs, the cleats of which interfit with flanges on the edges of the panels.

The panels are relatively narrow, 5″ to 8″, preferably made of sheet aluminum, have inwardly turned longitudinal edge flanges and are held together with coextensive generally C-shaped cleats. A pair of cleats, to connect a pair of outer panels and a pair of inner panels, are connected by a metal web which determines the spacing between the inner and outer walls, the space later being filled with some insulating material, concrete, or the like.

The crux of the invention is said to lie in the fact that the cleats extend along the entire length of the panels so that the cleats help to bear the load of the roof. Claim 20 gives an idea of the nature of the invention and reads as follows:

> 20. A building construction of the type having
> a foundation,
> an upright wall structure
> supported by said foundation, and
> a roof

---

10. See Part III, supra, especially the text accompanying note 8, supra.

1. Consisting of Keely, Examiner-in-Chief, and Andrews and Bendett, Acting Examiners-in-Chief, opinion by Bendett.

on and supported by load bearing parts of said wall structure, said wall structure comprising

a plurality of skin panels
extending the full height of the wall,
having

reversely bent longitudinal edge portions
arranged in edgewise butting relation forming spaced inner and outer wall portions with the joints between the outer wall panels being opposite corresponding joints between inner wall panels,

studs
of generally I-shaped cross-sectional configuration adapted to hold said butting panels together and to opposite corresponding butting panels, said studs including

spaced inner and outer cleats
each including
a medial flange interconnected with a pair of opposed channel members, said flange and channel members extending the full wall height,

said channel members
interlocking said reversely bent panel edge portions extending laterally of said medial flange from one edge thereof and connected thereto,

rigid web members
interconnecting the medial flanges of the inner and outer cleats at opposed joints,

means
between said roof structure and said walls spanning the inner and outer wall portion and extending over a plurality of studs,
said last-mentioned means carrying said roof structure and bearing endwise on said walls,
whereby to transfer the roof load jointly through said studs and said panels at said joints to said foundation.

The following references were relied on:

| | | |
|---|---|---|
| Schwartz | 2,815,832 | Dec. 10, 1957 |
| Brown (British) | 414,677 | Aug. 7, 1934 |

Brown discloses a wall construction generally similar to appellants' except that the studs which support the panels are of a different design. Schwartz discloses studs made, as appellants' are, of cleats and a web.

The examiner and board agreed that it would be obvious under 35 U.S.C. § 103 to change the design of the studs in Brown's structure to be like those of Schwartz. Appellants do not dispute this aspect of the rejection. Appellants argue only that the structure thus created would not meet their claims. Appellants contend that the crucial facet of their invention, the extension of the cleats along the entire length of the wall panels, is lacking in Brown and, of course, not made obvious by Schwartz.

The issue before us, then, is limited to whether Brown discloses cleats which share the load-bearing with the panels, i.e., whether the Brown cleats extend the length of the panels.

The drawing in the Brown patent is unclear. The board, however, pointed to the following passages from the Brown specification to support its view that the cleats are coextensive with the panels:

According to my present invention, I construct the walls and interior partitions of the building of airtight hollow vertical panels each comprising two lengths of sheet metal forming face members flanged and internally lipped along their longer vertical edges, said *face members* being *spaced and maintained parallel by flanged sheet metal transverse members of corresponding length.*

\* \* \* \* \* \*

A wall partition or door construction in accordance with my invention comprises sets of standardized sheet

metal elements assembled to form abutting cavity panels each set comprising a pair of face members inwardly flanged along their longitudinal margins and maintained, spaced and in parallel relationship by interposed perpendicular interlocking members which carry *C-shaped strips* engaging with, and *throughout the length of, inturned lips* on the abutting flanges of contiguous face members, said interlocking connections lying wholly within said panels.

\* \* \* \* \* \*

Referring to the said drawings, in the example therein illustrated, the exterior walls are constructed of vertical airtight cavity panels each comprising two lengths of sheet metal forming face members $a$, $a^1$ the vertical edges of which are flanged at $b$, $b^1$ and internally lipped at $c$, $c^1$, said *face members* being *spaced and maintained parallel by sheet metal end members d of corresponding length,* the vertical edges of which are flanged at $e$. \* \* *The strips* $f$, $f^1$ serve to *seal and* also to *connect abutting panels* together *being adapted to engage the lips c, $c^1$ throughout the length of the same.*

\* \* \* \* \* \*

I claim \* \* \*:—

1. A wall, partition or door construction comprising sets of standardized sheet metal elements assembled to form abutting cavity panels each set comprising a pair of face members inwardly flanged along their longitudinal margins and maintained spaced and in parallel relationship by interposed perpendicular interlocking members which carry *C-shaped strips* engaging with, and *throughout the length of inturned lips* on the abutting flanges of contiguous face members, said interlocking connections lying wholly within said panels. [Emphasis added.]

Appellants argue, in their turn, that nothing quoted *necessarily* requires the conclusion reached by the board. "A corresponding length," appellants urge, may mean no more than a fit length or a suitable length. "Flanged along their longitudinal margins," in appellants' view, may very well mean intermittently flanged and so drain the board's meaning from "throughout the length of \* \* \* inturned lips in the abutting flanges."

The question, of course, is whether there is a substantial basis for the board's finding of fact. In re Kunzmann, 326 F.2d 424, 51 CCPA 927 (1964). It seems clear to us that there is. The reference is valid for what it fairly conveys to one of ordinary skill in the art. In re Aller, 220 F.2d 454, 42 CCPA 824 (1955). We think a fair reading of the quoted passages leads to the board's conclusion.

Appellants also argue that Brown's provision for a bituminous seal atop his panels would be ineffective or impractical if the cleats extend the full length of the panels. The solicitor replies that it would be quite effective and practical too. Further, in the solicitor's opinion, it strains credulity to suppose that a professional builder would do other than extend the cleats.

Appellants' argument which in the end comes to a *bare assertion* of impracticality,[2] does not detract from the support the *evidence* of record provides for the board's conclusion. The decision of the board, therefore, is affirmed.

Affirmed.

SMITH, Judge (dissenting).

We face here another in the long series of decisions by a board consisting

---

2. Brown discloses, at the top of his panels, a layer of bitumen enclosed between supporting plates and sealing plates. Appellants argue that the supporting plates must overlie the cleats, it being impractical to fit them snugly to the internal form of the wall if the cleats extend to the very top of the panels. Appellants do not elaborate on the impracticality. We, of course, give no weight to the mere allegation.

of but one duly appointed examiner-in-chief. While I remain in the minority on the issue of the legality of the decisions rendered such boards, see In re Wiechert, 370 F.2d 927, 54 CCPA 957 (1967), I feel, for the reasons expressed in my dissent therein, that the continued practice of hearing appeals before boards of appeal so constituted is fundamentally wrong. Not only does this practice seem to have become a continuing practice in the Patent Office, but it is here indulged in apparently without regard to the limitations inherent in the statutory exception in 35 U.S.C. § 7. I say "apparently" because there is no record support here showing a compliance with the terms of the statutory exception in section 7. Even if we adopt the interpretation of this section which was relied upon by the majority in *Wiechert* the present record is silent either as to the need for the creation of such a board or as to the qualifications of its members who appear on this record simply as "acting examiners-in-chief."

Perhaps the time has come for a reappraisal of what now seems to have become an established practice in appointing such boards. The legislative history of 35 U.S.C. § 7, referred to at length in my dissent in *Wiechert*, shows that the enactment of paragraph 2 of that section was brought about by the need for permitting flexibility in administrative action to meet what was then an emergency situation due to the large number of appeals then pending within the Patent Office. It is clear that the enactment of this provision was to meet a particular situation rather than to establish a new practice,[1] the continuation of which in practical effect can be but to arrogate to the Commissioner the authority of the President to appoint and of the Senate to advise and consent as to the appointment of those who are to be examiners-in-chief. The practical effect of the present practice also is to abrogate the statutory limit of 35 U.S.C. § 3 as to the number of examiners-in-chief who may be so appointed.

I doubt that Congress intended that 35 U.S.C. § 7 should be productive of such practical results.

---

1. See my dissent in *Wiechert* wherein it is pointed out:

> The second paragraph of section 7 is a newer provision and states an exception to the requirements of section 3. It concerns the appointment under special circumstances of acting examiners-in-chief without requiring Presidential appointment and Senate confirmation. Instead, such acting examiners-in-chief are to be designated by the Commissioner under the therein specially stated circumstances. This exception in par. 2 of section 7 thus gives the Commissioner limited authority to name acting examiners-in-chief and limits the use he may make of them in designating particular panels of the Board of Appeals. It becomes necessary, therefore, to examine the history and background of this second paragraph of section 7 to determine whether Congress intended the exception therein stated to take precedence over and change the long standing general plan of independent appellate review we find clearly stated in paragraph 1 of section 7.