58 CCPA

**Herbert A. McANINCH and Spencer H. Mieras, Appellants,**

v.

**Loren J. O'BRIEN, Appellee.**

**Patent Appeal Nos. 8520, 8521.**

United States Court of Customs and Patent Appeals.

June 24, 1971.

Baldwin, J., filed a dissenting opinion.

John W. Butcher, Richard R. Trexler, Chicago, Ill., attorneys of record, for appellant; Charles L. Sturtevant, Washington, D. C., of counsel.

Carl F. Schaffer, Richard D. Emch, Toledo, Ohio, attorneys of record, for appellee.

Before RICH, ALMOND, BALDWIN, and LANE, Judges, and LANDIS, Judge, United States Customs Court, sitting by designation.

LANE, Judge.

These two appeals are from the decisions of the Board of Patent Interferences awarding priority to the junior party in two interferences upon finding that the application of appellants does not support the counts in each interference. The appeals have been presented to the court upon a consolidated record. We reverse in both cases.

Herbert A. McAninch and Spencer H. Mieras (McAninch), appellants and senior party, are involved in both interferences upon their application serial No. 769,682, filed October 27, 1958. Loren J. O'Brien (O'Brien), appellee and junior party, is involved in interference 95,056 upon his reissue patent No. 25,-500, granted December 24, 1963, upon reissue application serial No. 247,457, filed December 19, 1962, for the reissue of the original O'Brien patent No. 2,966,076, granted December 27, 1960, upon his application serial No. 6779, filed February 4, 1960. O'Brien is involved in interference 95,268 upon his application serial No. 173,284, filed February 14, 1962, said application being a continuation-in-part of an earlier O'Brien application, serial No. 71,331, filed November 23, 1960. In both interferences, O'Brien has been given the benefit of his earlier application filing date. Neither party has taken testimony. The sole issue before the court in the present appeals is the right of McAninch to make the eight counts in interference 95,056 and the three counts in interference 95,268. The Primary Examiner denied O'Brien's motions to dissolve both interferences and held that McAninch could make the interference counts. The Board of Patent Interferences took the contrary view and awarded "priority" to O'Brien.

The subject matter relates to limited slip differentials for motor vehicles. A conventional differential comprises a ring gear driven by a bevel gear on the drive shaft, a pinion case secured to the ring gear and pinions carried by the cage in engagement with oppositely disposed side gears splined or otherwise

connected to the oppositely extending drive axles of the vehicle so as to prevent relative rotary motion between the side gears and the axle halves. The purpose of a differential is to permit one drive wheel to rotate faster or slower than the opposite drive wheel when the vehicle turns a corner. The construction of a conventional differential is such that when one driving wheel is on dry pavement and the other driving wheel is on ice, the total traction that can be obtained is substantially only twice the traction of the wheel spinning on the ice. This may result in there being nearly no traction. Such a result is avoided by the use of a limited slip differential mechanism.

In a limited slip differential, friction means are interposed in the differential gearing structure. The McAninch limited slip differential construction is illustrated in Fig. 1 of the McAninch application drawings reproduced below.

McANINCH
S.N. 769,682

[A4169]

Referring to the illustration, the ring gear 18 shown in dot-and-dash lines is driven by a pinion on a conventional drive shaft not shown. A casing 12 is secured to the ring gear 18 and contains a cross shaft 36 secured therein by pin 39. Pinion gears 42 and 44 are rotatable on the shaft 36. Side gears 32

and 34 within the casing 12 engage the pinions 42 and 44, side gear 32 being splined to the inner end of axle 28 and the side gear 34 being splined to the inner end of the opposite axle 30.

The McAninch mechanism which provides resistance or limited slip to partially prevent differential action includes a slip clutch 46 between each side gear 32 and 34 and the casing 12. A clutch 46 includes annular plates 45 and 47, each having a splined outer periphery received in splines of the bore 43 of casing 12. The plates 45 and 47 are interleaved with annular discs 51 and 53, the latter being splined at their inner periphery to the externally splined projecting hubs 55 and 65 of side gears 32 and 34. The disc 53 is engaged by an annular block 49 also splined at its outer periphery to bore 43 of casing 12 and engaged by a snap ring 63 positioned in a groove in the bore 43 to retain the clutch discs in assembled relation. The plate 45 is engaged by an annular spring 57 of the Belleville type. The outer periphery of the spring 57 abuts a snap ring 59 positioned in a groove at the inner end of bore 43. By means of the spring 57, the clutch plates 45 and 47 and the discs 51 and 53 are maintained in the casing 12 between the snap rings 59 and 63 and maintained in frictional contact. The spring action exerts a constant resistive bias on the side gears 32 and 34 through the splined hubs 55 and 65 so that differentiation is retarded. Differential action is also further retarded by the action of tooth pressures of the pinion gears 42 and 44 against the side gears 32 and 34 which engage the plates 49 to increase the pressure applied to the slip clutches 46 in proportion to the driving torque input.

Each of the eight counts in interference 95,056 originated in O'Brien reissue patent No. 25,500 and recites resilient means "independent" of the side gears to load the clutch plus means dependent on input torque to increase the clutch loading. Count 1 reproduced below is representative.

1. In a differential transmission unit the combination comprising

(a) a gear case,

(b) a power transmission gear train operatively positioned within said case and driven thereby and including a pair of gears,

(c) clutch means operatively connected to said power transmission gear train and said case for opposing relative rotative movement of said gears of said gear train,

(e) and resilient means independent of said gear train and operatively connected to said clutch means for loading said clutch means,

(f) the gears of said gear train being meshed in a relationship to provide a component of tooth pressure for urging at least one gear of said gear train axially outward to increase the loading of said clutch means in proportion to input torque to the transmission.

Each of the three counts in interference 95,268 originated in O'Brien application serial No. 173,284 and recites friction clutch means or friction plates disposed between the gear train and the gear case plus movement of a side gear axially outward to "increase" the force applied to the friction surfaces in proportion to the input torque. Count 1 reproduced below is representative.

1. A differential transmission unit comprising in combination, a rotatable gear case, a power transmission gear train operatively positioned within said case, clutch means operatively disposed between said gear train and said gear case for opposing relative rotation of the members of said gear train, said clutch means including a pair of friction surfaces at least one of which is associated with said gear train for rotation therewith and another of which is associated with said gear case for rotation therewith, and resilient means engaging said case and said clutch means with the bias thereof being independent of said gear train for causing engagement of said friction surfaces, the gears of said gear train being meshed in a relationship to provide a component of tooth pressure for urging at least one gear of said gear train axially outward to increase the force applied to said friction surfaces in proportion to the input torque to the transmission.

The board interpreted the count language as meaning that the resilient means applies a clutch loading effect without using the side gears in any way. With reference to the McAninch disclosure in interference 95,056, the board found:

8. We find further that the description relating to the snap ring 63 and its function does not relate to the final, assembled device in condition for normal operation as it appears in the drawing. Nothing in the description even hints at the idea that the snap ring 63 is so positioned and so co-operates with those elements that the clutch elements and springs are placed under any compression. Those elements are only retained in assembled relation without more. Accordingly, we find nothing in that description disclosing the concept that the springs 57 co-act with the clutch elements 45, 47, 51 and 53 and with the snap ring 63 so as to load or engage the clutch and thus produce sufficient friction to resist relative rotation between the housing and the side gears, i. e. to constitute a limited slip device. On the contrary we find only the concept that there is such sufficient friction present *only* when the side gear face is in fact in "frictional engagement" with the block 49. We find that the presence of the side gear, as the member against which the spring and clutch elements act, is essential to the production of the additional loading responsive to torque input, and to the overall operation of the differential.

Similarly in interference 95,268, the board found:

8. On the contrary we find only the concept that there is friction present only when the side gear face is in fact

in "frictional engagement" with block 49. We find that the presence of the side gear, as the member against which the spring and clutch elements act, is essential to the production of the initial frictional effect or bias of the clutch as well as to the production of the additional loading responsive to torque input, and the overall operation of the differential.

Appellants contend that the board erred in holding that McAninch does not disclose structure which supports the interference counts. The question appears to be whether or not the McAninch snap ring 63 functions to hold the clutch elements under initial loading by the spring 57. The McAninch specification states in reference to the Fig. 1 illustration—

The block 49 has an annular recess 61 in which is received a snap ring 63 which resides in a correspondingly formed groove in the bore 43 to retain the elements 45, 47, 49, 51 and 53 in assembled relation.

It will be appreciated that the springs 57 exert a constant resistive bias on the side gear 32 and the output shaft 28 so that differentiation is retarded. Differentiation is also resisted by the tooth pressure of the pinion gears 42 and 44 against the side gears 32 and 34. Since the tooth pressure varies in accordance with the torque input to the differential unit, the resistance to differentiation increases in proportion to torque input and thus the total resistance to differentiation is cumulative.

We conclude that the McAninch application drawing and the quoted description renders it abundantly clear that the snap ring 63 is held in a "correspondingly formed groove in the bore 43" of casing 12 so that the spring 57 "exerts a constant resistive bias" through the clutch discs 51 and 53 splined to the hub 55 of the gear 32. If this were not so, the McAninch ring 63 would have no function. The constant restrictive bias tending to compress the clutch discs is

independent of the added restrictive bias produced by the gear train when gear 32 moves outward from gear 42 in response to an increase in input torque. The quoted description also renders it clear that tooth pressure responsive to torque input "increases" the resistance to differential action and thus "the total resistance to differentiation is cumulative" and is the sum of the "constant resistive bias" and the effect of the "torque input."

Appellants further contend that the structure disclosed in O'Brien application serial No. 173,284 (hereinafter '284) is similar to the McAninch application disclosure and that therefore McAninch can make the counts if O'Brien can. We agree. Fig. 1 of the application drawings in O'Brien '284 is reproduced below.

FIG. 1

O'BRIEN
S.N. 173,284

A comparison of the McAninch Fig. 1 with O'Brien '284 Fig. 1 shows that the structures are substantially identical except that O'Brien '284 utilizes "shoulder 76 of the case 10" instead of the McAninch snap ring 63 held in a "groove in the bore 43" of the casing 12. O'Brien uses a Belleville spring 72 which compresses the clutch discs be-

tween the casing 12 and the shoulder 76 to provide an initial bias or preload on his clutch to resist differential action, and likewise O'Brien uses the teeth of the gear train to move the side gear axially outward to increase the resistance to differential action.

The test of the right to make counts is to be found in the total disclosure. Woofter v. Carlson, 367 F.2d 436, 54 CCPA 917 (1966). We conclude that the senior party's application adequately discloses, both in the drawings and in the specification, the structures defined in the counts of both interferences.

For the foregoing reasons, the decisions of the board in both appeals are reversed.

Reversed.

BALDWIN, Judge (dissenting).

I respectfully dissent. I find myself in disagreement not only with the decision reached by the majority, but also with the reasoning behind that decision.

As I read the majority opinion, it does not appear to question the board's interpretation of the counts as requiring that the load effect which the resilient means imposes on the clutch be attained by means which do not involve the side gears. Rather, it seems to base its reversal solely on disagreement with the board's view that the McAninch application does not disclose a structure which operates in conformity with that requirement. To me, this is a question of fact, purely and simply. This court has said on a number of occasions that findings of fact made by the board in interpreting a disclosure are not to be set aside lightly or in the absence of cogent evidence of mistake. See Rodli v. Phillips, 154 F.2d 139, 33 CCPA 865 (1946); Harris v. Clifford, 363 F.2d 922, 53 CCPA 1463 (1966). Compare In re Denny, 397 F.2d 1020, 55 CCPA 1315

(1968). In this case, it seems to me, the majority has overturned the board's finding as to the operation of the McAninch structure without even pointing out any substantial evidence of error in that finding. I believe there is no such evidence in the record and, accordingly, I would affirm the board's decision.

Finding of fact No. 8, made by the board in Interference No. 95,056 and quoted in the majority opinion, explains clearly why the board held McAninch to disclose that, in his assembled structure, it is the side gear 32 rather than the slip ring 63 that is engaged by the block 49 for cooperation with the spring 57 to load the clutch. The majority appears to find the McAninch drawing and an excerpt from the specification, also set out in the opinion, to demonstrate that the snap ring 63 and not the side gear 32 engages the block 49 to provide the loading. In my opinion, the McAninch drawing by itself provides no significant indication either way on this issue. As to the aforementioned excerpt from the specification, it is my view that that statement actually supports the view of the board, rather than indicate error in that view (the board did, in fact, rely on such statement as well as others in the application).

Appellants' contention, that the O'Brien application in Interference No. 95,268 is so similar to the McAninch application that if the former supports the counts the latter also does, was rejected by the board, which found the O'Brien structure to operate in a different manner and provide preloading independently of the side gear. I do not think that finding has been shown to be erroneous. Moreover, the asserted similarity is hardly pertinent to Interference No. 95,056, which involves appellee's reissue patent on a structure decidedly different from that of either application.