51 CCPA

**Application of Ludwig KUNZMANN.**
**Patent Appeal No. 7038.**

United States Court of Customs
and Patent Appeals.
Jan. 23, 1964.

George H. Spencer, Harvey Kaye, Spencer & Kaye, Washington, D. C., for appellant.

Clarence W. Moore, Washington, D. C. (George C. Roeming, Washington, D. C., of counsel), for Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, SMITH, and ALMOND, Judges.

SMITH, Judge.

The issue presented by this appeal is whether the Patent Office Board of Appeals was correct in holding that claims 8, 9, 14–18 and 20–23 of appellant's application [1] were directed to a structure which was obvious in view of the prior art, and thus unpatentable under 35 U.S. C. § 103.

The appealed claims relate to an expansible band or bracelet of the type commonly used with wrist watches. Appellant's band, as claimed in the appealed claims, has two layers of separate tubular links, each link having a rectangular cross-section. The longitudinal axes of the links are parallel and extend in a direction transverse to the longitudinal direction of the band. The links in one layer are offset, in the longitudinal direction of the band, with respect to the links in the other layer. Two U-shaped brackets pivotally connect each end of a link in one layer with the nearest two links in the second layer. The bracket legs fit inside the connected links and engage springs which are located within the links and which exert a force on the legs so as to pull the links in each layer toward each other and thus resiliently hold the bracelet assembly in a contracted position. In all the appealed claims, either one or both of the layers have links constructed so that one wall of the link is longer at each end than the other walls. After the band is assembled these extensions are bent down to cover the open ends of the links, thus overlying portions of the U-shaped connecting brackets and holding them in place. The extensions when bent down provide slots which permit free pivotal movement of the connecting brackets.

Claims 8, 9 and 21 further provide that the links in the layer next to the skin are of substantially lesser width than those in the outer layer. Thus, when the band is in the contracted position, the links in the inner layer are spaced apart from one another, while the links in the outer layer abut. · This feature is said to allow a larger range of movement of the links in the longitudinal direction of the band,

1. Serial No. 595,768, filed July 3, 1956, for "Elastic Bracelets."

and *also* to eliminate annoying pulling of hairs and pinching of skin.[2]

The references relied on to support the rejection are:

| Thornton | 914,533 | Mar. | 9, 1909 |
|---|---|---|---|
| Kestenman | 1,808,140 | June | 2, 1931 |
| Stiegele | 2,689,450 | Sept. | 21, 1954 |
| Saccone | 2,713,766 | July | 26, 1955 |
| Tost | 1,684,977 | Sept. | 18, 1928 |

Claims 14–18, 20, 22 and 23 were rejected as unpatentable over Stiegele in view of Tost and Kestenman, claims 8, 9 and 21 over Stiegele in view of Tost and Saccone, and claim 16 also over Thornton alone.

The primary reference, Stiegele, discloses an expansible band very similar to the one claimed by appellant. Indeed, there are but three substantial differences between them: 1) the links shown by Stiegele are of oval rather than rectangular cross-section; 2) Stiegele does not show spacing of the links in the inner layer; and 3) Stiegele does not use bent-down extensions to cover the open ends of the links and hold the connecting brackets in place. Therefore, the precise question before us is whether the differences between the Stiegele band and appellant's device, when evaluated in the light of the teachings of the other references, are such that appellant's subject matter as a whole would have been obvious to one of ordinary skill in the art.

The examiner cited Tost in support of his contention that "only the ordinary skill of the art would be required" to conceive of retaining the connecting brackets of Stiegele by means of bent-down extensions. Tost discloses a flexible (*not* expansible) link strap wherein the flanged sides of the links of one layer hold the flanged sides of the links of the other layer in place. An extension is provided at each end of the links in one of the layers and is bent over to prevent the assembled links from disengaging vertically. The examiner felt that it would be obvious in view of the structure shown in Tost to provide bent-down extensions on one wall of the Stiegele links. We agree with that conclusion.[3]

Appellant argues in his brief that "it would be rather difficult and therefore unobvious" to provide bent-down extensions on the Stiegele links, since they are of oval cross-section. However, as the

2. Claim 8 contains the significant claimed features, and reads as follows:

"8. An elastic link strap comprising, in combination, two superimposed layers of substantially rectangular hollow link casings having open outer ends and extending substantially parallel to each other transversely to the longitudinal direction of said strap, the casings in one of said layers being offset in the longitudinal direction of said strap relative to the casings in the other layer, the lower casings being of substantially smaller width than the upper casings and being spaced from each other in the contracted position of said strap, substantially U-shaped connecting brackets at both open outer ends of said casings and each having a back portion and an upper and lower arm on said back portion, two corresponding arms of two adjacent connecting brackets extending into one open end of each of two adjacent casings of the other layer, resilient means in said casings engaging said brackets and urging said brackets into a position in which said strap is contracted, the upper wall of each of said upper casings having an extension thereon projecting beyond said open ends thereof, said extensions being bent downwardly so as to cover said open ends of said upper casings and the upper half of each of said back portions of said connecting brackets after the arms thereof have been inserted into said casings, so as to retain said arms within said casings and prevent them from slipping out of the open outer ends thereof."

3. Appellant asserts in his brief, as he did before the Patent Office and at oral argument, that it is possible for the connecting brackets in the band disclosed by Stiegele to fall out of the links. In making this assertion, it appears that appellant is not challenging the operability of the Stiegele band, but is merely pointing out its shortcomings. In view of our conclusion with respect to the obviousness of appellant's bent-down extensions, which serve to hold the brackets in place, this argument is immaterial. At any rate, however, the examiner appears to have considered thoroughly this assertion, and to have found otherwise. Since appellant has not shown this finding to be clearly erroneous, we accept it as fact.

426

solicitor points out, the Stiegele specification expressly indicates that the cross-sectional configuration of the links is a matter of choice, dictated by personal taste in design. At any rate, patentability of a structure cannot be predicated solely on the fact that a certain element of the structure would be "rather difficult" to make. Also, of the claims on appeal only claims 8 and 9 recite a "substantially rectangular" cross-section, and the specification nowhere demonstrates the criticality of this limitation.

The examiner also took the position that providing slots, as recited in claims 20–23, would have been necessary in order to permit free pivotal movement of the connecting brackets, and would therefore have been obvious. In addition, the examiner cited Kestenman, which shows a flexible strap in which rectangular, hollow box links are connected alternately with connecting links. Both sets of links have bent-over extensions, and the extensions of the box links are bent over in such a way as to leave a slot for the connecting links. It is our opinion that appellant's slots would have been obvious in view of the teaching of Kestenman.

As indicated previously, claims 8, 9 and 21 call for, in addition to the foregoing features, spacing of the links of the inner layer. The examiner relied upon the Saccone reference to support his position that "it would merely involve the application of an old and therefore obvious expedient to make the links of one row of the Stiegele linkage of narrower width than those of the other row, thus spacing the narrow links when the wider ones are in the abutment." Saccone shows an expansible bracelet of somewhat different construction than appellant's, in that the band is of the "X-type" with the action of the links being similar to the opening and closing of scissors. Appellant argues that this generally different construction vitiates anything Saccone may suggest with respect to spacing the links of the inner layer. Appellant also contends that Saccone does not in fact disclose any spacing between links; that the apparent spacing in Fig. 8 of the Saccone drawings is merely a draftsman's expedient and is not mentioned in the specification or claims.

We think the examiner was correct in his evaluation of the teaching of the Saccone reference. Fig. 8 clearly shows a spacing between links, and appellant has failed to demonstrate that the examiner's finding in this regard was clearly erroneous. Moreover, we believe that notwithstanding the generally different construction of Saccone, the teachings of that reference must be presumed to have been part of the knowledge of one ordinarily skilled in this art at the time appellant made his invention.

We need not consider the soundness of the additional rejection of claim 16 as unpatentable over Thornton, since as we have indicated, we think the board was correct in sustaining the examiner's rejection of all the claims based on various combinations of the other four references.

The decision of the board is affirmed.

Affirmed.