**In re Andreas G. KEMPS.**

**No. 96–1130.**

United States Court of Appeals, Federal Circuit.

Oct. 8, 1996.

Andrew J. Patch, Young & Thompson, Arlington, VA, argued, for appellant.

Linda Moncys Isacson, Associate Solicitor, Office of the Solicitor, Patent and Trademark Office, U.S. Department of Commerce, Arlington, VA, argued, for appellee. With her on the brief were Nancy C. Linck, Solicitor, Albin F. Drost, Deputy Solicitor, and Kevin Baer, Associate Solicitor.

Before ARCHER, Chief Judge, MAYER, and LOURIE, Circuit Judges.

ARCHER, Chief Judge.

Andreas G. Kemps appeals the decision of the United States Patent and Trademark Office (PTO) Board of Patent Appeals & Interferences (Board), Appeal No. 95–2635, dated September 28, 1995, affirming the examiner's rejection under 35 U.S.C. § 103 (1994) of all remaining claims of the patent application. We affirm.

## BACKGROUND

The claimed invention in this application, No. 08/070,359, is a method of removing old asphalt concrete containing a stone fraction using two steps: (1) blowing steam onto the old asphalt concrete in order to soften it and (2) pushing off a thus-softened upper layer without crushing the stone fraction. The method is to be applied to two-layer road surfaces, with the upper layer containing drainage cavities and the lower layer being dense and generally impermeable. The porous upper layer facilitates the steam heating in two ways. First, the porosity affords a greater surface area upon which the steam can condense, allowing greater transfer of the heat generated by condensation of the steam. Second, the pores serve to drain the condensed water from the layer, facilitating the entry of more steam into the upper layer.

Specifically, claim 3 [1] of Kemps' application states:

3  A method for removing from a road old asphalt concrete containing a stone fraction, comprising blowing steam onto the old asphalt concrete to soften the

---

1. Only claims 3, 4, 6, and 7 are at issue on this appeal. Because Kemps has not separately argued the merits of dependent claims 4, 6, and 7, they stand or fall with independent claim 3. *In re Kaslow*, 707 F.2d 1366, 1376, 217 USPQ 1089, 1096 (Fed.Cir.1983).

old asphalt concrete, and then pushing off and removing only a thus-softened upper layer of the old asphalt concrete without crushing of said stone fraction, wherein said road comprises an upper layer of open asphalt concrete having cavities therein which ensure perfect drainage and a lower layer of dense asphalt concrete below said open asphalt concrete, and said old asphalt concrete is removed only from said upper layer.

The examiner rejected Kemps' claims on the basis of United States Patent No. 4,226,552, issued to Moench (Moench), in view of United States Patent No. 4,793,730, issued to Butch (Butch). The examiner described Moench as teaching the heating of asphalt concrete with a hood heated by gas burners, the breaking up of the heated asphalt with a scarifying element, and the scraping away of the heated asphalt with a blade. Butch, according to the examiner, teaches a similar process in which steam is used to heat the asphalt surface. As a result, the examiner concluded that it would have been obvious to one of ordinary skill in the art to use steam, as per Butch, to heat the pavement before scraping it away, as per Moench.

The Board, in affirming the examiner's determination, noted Butch specifically teaches the use of steam to overcome complications of polymerization and oxidation associated with the use of flame burner units. Moreover, the Board rejected Kemps' contention that the concrete with drainage openings called for in the claim distinguished the claimed invention because, as admitted by the applicant, this type of surface is well-known in the art. One of ordinary skill in the art would have used the combination of Moench and Butch on any surface, including the one disclosed in Kemps' application. The claimed invention, therefore, would have been obvious to one skilled in the art.

**2.** That the standard of review of the Board's factual determinations is the "clearly erroneous" standard, and not the "arbitrary and capricious" standard as presented by the PTO in its brief and oral argument, is discussed below.

**3.** Asphalt concrete consists of two components: the aggregate and the asphalt. The wheel loads

## DECISION

### I.

■ The sole issue in this appeal is whether the Board erred in holding the claims unpatentable under 35 U.S.C. § 103. The ultimate determination of obviousness is a question of law that we review de novo; the factual inquiries upon which that determination is made, however, are binding on this court unless shown to be clearly erroneous.[2] *In re Woodruff,* 919 F.2d 1575, 1577, 16 USPQ2d 1934, 1935 (Fed.Cir.1990). Such factual determinations include what a reference teaches and whether a reference teaches toward or away from the claimed invention. *In re Bell,* 991 F.2d 781, 784, 26 USPQ2d 1529, 1531 (Fed.Cir.1993).

■ We have reviewed the examiner's findings and are not persuaded that they are clearly erroneous. We further agree with the conclusion that the claimed invention would have been obvious to one skilled in the art.

Kemps argues that one skilled in the art would lack motivation to combine the teachings of Moench and Butch in a manner not only to replace the use of gas burners with steam but also to remove the asphalt concrete without crushing the stone fraction[3] thereof. Kemps contends that, as Moench and Butch respectively use a scarifying element and breaking bars, the stone fraction must necessarily be crushed. By simply pushing away the heated layer, the claimed invention advantageously preserves the particle size distribution.

With respect to the replacement of gas burners with steam, the findings of the examiner and the Board as to the teachings of Moench and Butch as aforementioned are not contested nor are they clearly erroneous. The Board noted that Butch explic-

of the pavement are supported by the aggregate, while the asphalt serves merely to bind the aggregate together. *See* J. ROGERS MARTIN & HUGH A. WALLACE, DESIGN AND CONSTRUCTION OF ASPHALT PAVEMENTS 1 (1958). Kemps refers to the aggregate as the "stone fraction." For simplicity, we will do the same.

**1430**

itly discusses the problems associated with the earlier gas burning units: the high temperatures associated with the gas burners contribute to additional oxidation and polymerization of the asphalt. These problems, according to the Board, provide the motivation for combining Moench and Butch.

■ There is no error in the Board's determination that there would be sufficient motivation to replace the gas burners with steam. Although the motivation to combine here differs from that of the applicant, the motivation in the prior art to combine the references does not have to be identical to that of the applicant to establish obviousness. *In re Dillon,* 919 F.2d 688, 693, 16 USPQ2d 1897, 1901 (Fed.Cir.1990) (in banc). Further support for the Board's contention is found within Butch itself. Butch makes specific reference to Moench, noting that the high temperatures associated with the Moench process "tend to further degrade the asphaltic material." Butch at col. 2, lines 11–16. Consequently, we find no error in the Board's determination that there is sufficient motivation to combine the two prior art references resulting in the replacement of gas burners with steam.

As to the preservation of the stone fraction, the PTO contends that the retention of the particle size distribution is taught by Moench. Specifically, Moench discloses that the invention provides an apparatus for "heating and breaking up old asphaltic pavement into a loose, aggregate-asphalt mixture that is of *approximately the original aggregate size range*...." Moench at col. 2, lines 16–19 (emphasis added). Similar statements are found throughout the Moench specification. Moreover, the PTO argues that the presence of the intermediate step in Moench, the use of the scarifying element, does not negate the teaching of removal of asphalt concrete without the crushing of the stone fraction.

We agree with the position of the PTO. Moench explicitly discloses the preservation of the stone fraction size, a contention that Kemps challenges with only the bare assertion that the stone fraction necessarily must be crushed. There is no reason why this assertion must be true. The scarifying element in Moench serves to break apart the asphalt binder, not to crush the stone fraction. The applicant's arguments are insufficient to overcome the PTO's prima facie case of obviousness.

In summary, Moench in view of Butch teaches both aspects of the claimed invention: the use of steam in lieu of gas heaters and the retention of the stone fraction size distribution. There is sufficient motivation to combine Moench and Butch, as Butch details the disadvantages of the use of gas heaters with specific reference to Moench. We hold, therefore, that the application was properly rejected under 35 U.S.C. § 103.

## II.

It is appropriate that we comment on the standard of review of factual determinations asserted by the PTO in this case. In its brief and at oral argument, the PTO affirmatively propounded the "arbitrary and capricious" standard of review provided by the Administrative Procedure Act (APA) for use in informal adjudicative proceedings. In fact, the PTO briefed the entire case under this standard in contravention of the precedent of this circuit.

■ The law of this circuit is clear: PTO factual determinations are reviewed under the "clearly erroneous" standard. *See In re Borden,* 90 F.3d 1570, 1576, 39 USPQ2d 1524, 1527 (Fed.Cir.1996); *In re GPAC, Inc.,* 57 F.3d 1573, 1577, 35 USPQ2d 1116, 1119 (Fed. Cir.1995); *In re Vaeck,* 947 F.2d 488, 495, 20 USPQ2d 1438, 1444 (Fed.Cir.1991); *In re Woodruff,* 919 F.2d 1575, 1577, 16 USPQ2d 1934, 1935 (Fed.Cir.1990); *In re King,* 801 F.2d 1324, 1326, 231 USPQ 136, 137 (Fed.Cir. 1986); *In re Longi,* 759 F.2d 887, 892, 225 USPQ 645, 648 (Fed.Cir.1985); *In re De Blauwe,* 736 F.2d 699, 703, 222 USPQ 191, 194 (Fed.Cir.1984); *In re Kunzmann,* 51 C.C.P.A. 927, 326 F.2d 424, 426, 140 USPQ 235, 237 (1964).

The briefing of the entire case by the PTO under the incorrect standard was inappropri-

ate.[4]  Such disregard of the precedent of this court unfairly burdened the applicant.  As was noted in applicant's reply brief, Kemps felt like "a bystander to some long-running dispute to which he really is not a party." The use of the incorrect standard required applicant to expend time, money, and resources to respond to an argument that as noted below was not an issue the panel needed to decide.

  Aside from the unfair burdening of Kemps, the manner in which the issue was raised and argued was inappropriate for a number of reasons.  As known and admitted by the PTO at oral argument, a panel of the Federal Circuit does not possess the power to overrule precedent.  *Newell Cos., Inc. v. Kenney Mfg. Co.*, 864 F.2d 757, 765, 9 USPQ2d 1417, 1423 (Fed.Cir.1988).  Such a change in law can only occur through an in banc hearing.  *Id.; see* Fed. Cir. R. 35(a). Although Rule 35 of the Federal Circuit Rules notes that a party desiring to argue for overruling need .not make a suggestion for an in banc hearing,[5] the PTO here never explicitly argued for an overruling of our precedent: the PTO simply declared that the standard of review was "arbitrary and capricious,"[6] briefed the case as such, and effectively disregarded the substantial precedent behind the court's standard of review, with only a footnote recognizing the correct standard.

Also of importance is the admission by the PTO that the standard of review is irrelevant to the determination of this case.  The PTO conceded at oral argument that, in their view, this case should be decided the same under either standard of review.  Consequently, the standard of review issue is not ripe at this time.  Consideration, therefore, would be premature in this case.

Accordingly, regardless of the merits of the PTO's argument that the APA standard should be applied, the use of that standard in this case was inappropriate and unnecessary. It unfairly burdened Kemps and did not present an issue requiring determination. Under these circumstances, we consider the PTO's brief and argument less forthright than we expect and normally receive.

*AFFIRMED.*

---

4.  Although the PTO has suggested the APA standard of review in a footnote in prior cases, this appears to be the first case in which the PTO has presumptuously assumed this standard for briefing and argument.

5.  Although Rule 35 permits overruling of precedent arguments without seeking an in banc hearing, the long standing standard of review in this court of factual findings of the Board makes the in banc hearing approach more appropriate.

6.  The PTO additionally presumed that, assuming *arguendo* that the APA standard would apply, the examination process would fall under the informal adjudication provisions of the APA, as opposed to formal adjudication that uses "substantial evidence" as its standard of review.  The PTO effectively assumed away two key points in its alleged "argument" of the standard: whether the APA should even apply to the PTO in this case and, if so, what type of adjudication should patent prosecution be considered.  As such, calling the PTO's brief an "argument" for the overruling of our precedent would be a significant stretch.